**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Khanh G. Doan, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No.: 2:07-1572-PMD-GCK |
| ) | |
| ) | **ORDER** |
| QualxServ, LLC and ) | |
| Tom Doonan, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

In this employment discrimination action, Plaintiff Khanh G. Doan ("Doan" or "Plaintiff"), proceeding *pro se* and *in forma pauperis*, alleged discrimination based on his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This matter is before the court upon Defendants QualxServ, LLC ("QualxServ") and Tom Doonan's ("Doonan") (collectively, "Defendants") Motion for Summary Judgment and Motion to Strike. The record includes a Report and Recommendation ("R&R") of United States Magistrate Judge George C. Kosko, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B). A party may object, in writing, to a R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Plaintiff filed a timely objection to the R&R. For the reasons set forth herein, the court grants the Defendants' Motion for Summary Judgment and denies the Defendants' Motion to Strike the Affidavit of the Plaintiff.

**BACKGROUND**

Plaintiff began his employment with QualxServ, then operating as Getronics, on March 20, 2000 as a part-time technician, formally given the title of QualxServ Service Partner ("QSP"). (Joint

1

Factual Brief ("JFB") ¶¶ 2, 4.) As part-time employees, QSPs are paid on a per call basis, and Plaintiff began at a rate of $35 per call. *Id.* at ¶ 6. On January 6, 2003, the rate per call received by all QSPs was reduced to $32. *Id.* Also in 2003, QualxServ began limiting the amount of calls QSPs could take per week. *Id.* at ¶ 18. All QSPs are limited to either 30 calls or 30 hours per week. *Id.* Plaintiff's pay for the years 2001-2006 was as follows: $64,715.00 (2001), $87,605.00 (2002), $71,995.50 (2003), $41,856.83 (2004), $44,100.92 (2005), and $36,727.95 (2006). (Defs.' Resp. At 7.) Since Plaintiff has been employed with QualxServ, he has had various supervisors, including Defendant Doonan, who was Doan's supervisor from June 2006 to March 2007. (JFB ¶ 5.)

QSPs are held to QualxServ's Standards of Ethics and Business Conduct Policy (the "Policy"). (JFB ¶ 8.) Doan agreed to the Policy in May 2000. *Id.* at ¶ 9. The Policy states that employees are to perform their duties "responsibly, honestly, diligently, and with good judgment, in conformity with policies and procedures and standards established by the Company." *Id.* at ¶ 10. The Policy also states that employees are to: (1) "avoid conflicts of interest and other situations which might prove harmful to the Company"; (2) "avoid even the appearance of impropriety"; (3) refrain from using "their position at the Company to benefit any other business or person outside of the Company, or to benefit themselves independently of the Company's business" and (4) refrain from "participat[ing] directly or indirectly in any outside business activity involving contract with or work for customers, unless the activity is approved in writing by the Legal Department." *Id.*

In August 2006, Plaintiff went on a service call to a private home to replace the customer's hard drive. (JFB ¶ 11.) The customer subsequently asked Doan whether he would install software on the customer's computer for a payment of $100. (Doan Aff. ¶ 21.) Plaintiff installed the software and took payment, which he kept as personal profit. *Id.* at ¶ 24. After discovering this violation of

2

QualxServ policy, on Friday, August 17, 2006, Doonan terminated Doan. *Id.* at ¶ 34; Doonan Aff.¶ 3. On Monday, August 21, 2006, Doan spoke with Karen Moriarty ("Moriarty"), a representative of QualxServ Human Resources, and stated to her that Doonan had fired Doan without providing "good" or "clear" reasons. (JFB ¶¶ 12-13.) Moriarty then spoke with Doonan, who acknowledged that Doan was a good technician and that this was the first serious issue regarding his employment. *Id.* at ¶ 14. Moriarty then asked Doonan to reconsider, and he did, reinstating Doan that same day, August 21, 2006. *Id.*

The record shows Plaintiff contacted the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that he was subjected to discrimination based on his race (Asian) and national origin (Vietnamese). On May 17, 2007, the EEOC sent a letter to the Plaintiff, which stated that there was not enough information to conclude a violation had occurred, and declined to further review the case. Therefore, administrative remedies were exhausted.

On June 16, 2007, Plaintiff, proceeding *pro se*, filed the complaint against Defendants in this court. Plaintiff has since obtained counsel. Defendants denied any discrimination in their Answer, and filed a Motion for Summary Judgment on January 22, 2008. Defendants claim in their Motion for Summary Judgment that Plaintiff cannot make a prima facie case for disparate treatment under Title VII, because Doan can show neither that an adverse employment action occurred nor that he was treated differently than any employees outside his protected class. (Def.'s Mot. Summ. J. at 1.) In response to Defendants' Motion, Plaintiff asserts that he has overcome the summary judgment standard for both of Defendants' contentions. (Pl.'s Resp. at 10-12.) On February 25, 2008, Defendants filed a Motion to Strike seeking to delete certain language from the Plaintiff's affidavit filed with the Plaintiff's Response to Defendants' Motion for Summary Judgment.

3

In the R&R dated April 22, 2008, Magistrate Judge Kosko recommended granting Defendant's Motion for Summary Judgment and Motion to Strike and recommended that this court award attorneys' fees to the Defendants.  (R&R at 49.)  The R&R determined that the Plaintiff had not established a prima facie case of discrimination; the Magistrate Judge stated the Plaintiff had not established that he suffered an adverse employment action, or that he was treated differently from similarly situated employees outside the protected class.  *Id.* at 29.  Plaintiff filed a timely objection to the R&R.

## STANDARD OF REVIEW

### A.     Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R.  28 U.S.C. § 636(b)(1).  Where no specific written objections are made, the court "need not conduct a *de novo* review, but must instead only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).  After a review of the entire record, the R&R, objections filed by Plaintiff, and Defendant's response to those objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and correctly recommended granting the Motion for Summary Judgment.  However, because the Court finds Plaintiff can establish adverse employment action and disagrees with the Motion to Strike recommendation, the Court modifies the R&R.

4

**B.      Motion for Summary Judgment**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  "Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992) (*citing Richmond, F. & P. R.R. v. United States*, 945 F.2d 765,768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992)).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

## ANALYSIS

**I.      Motion for Summary Judgment**

Plaintiff first objects to the Magistrate Judge's determination that he has not established a prima facie case of employment discrimination under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).  "A plaintiff may establish discrimination via direct or circumstantial

5

evidence that discrimination motivated the employer's adverse employment decision." *Sutton v. Cree, Inc.*, 386 F. Supp. 2d 600, 604 (M.D.N.C. 2005) (*citing Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001)). "Direct evidence of discrimination is either direct evidence of a stated purpose to discriminate, or circumstantial evidence of sufficient probative force to raise a genuine issue of material fact." *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 478-79 (E.D. Va. 1999) (*citing Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996)); *See also Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). If the plaintiff only puts forth indirect evidence of discrimination, the burden shifting method of proof set forth in *McDonnell Douglas Corp. v. Green* applies.[1] *See Onuoha v. Grafton School, Inc.*, 182 F. Supp. 2d 473, 479 (D. Md. 2002).

The court will analyze Plaintiff's claim under *McDonnell Douglas*, because, though in the R&R the Magistrate Judge analyzed the case under both the *McDonnell Douglas* and the *Price Waterhouse* mixed-motive framework, (R&R at 26, 47) the Plaintiff only objected to the analysis under *McDonnell Douglas*. (Pl.'s Objections at 2.) *McDonnell Douglas* specifies that "the

---

[1] Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If a plaintiff can establish a prima facie case, the burden then shifts to the defendant "to produce evidence that the defendant took adverse employment action 'for a legitimate, nondiscriminatory reason.'" *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 427 F. Supp. 2d 595, 604 (E.D.N.C. 2006) (*quoting Burdine*, 450 U.S. at 254). This burden is one of production, not persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If defendant meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (internal quotation marks omitted). The plaintiff can demonstrate pretext "by showing that the employer's 'explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of illegal discrimination.'" *McDougal-Wilson*, 427 F. Supp. 2d at 604 (quoting *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004)).

complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. at 802. As the Magistrate Judge noted in the R&R, in order to establish a prima facie case of discrimination, a Title VII plaintiff relying on indirect evidence must demonstrate that (1) he is a member of a protected group; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees outside the protected class. (R&R at 26.)[2] The Magistrate Judge noted Plaintiff was a member of a protected group based on his race (Asian) and national origin (Vietnamese). *Id.* at 28. Furthermore, the Magistrate Judge found that both the Plaintiff and the Defendants agreed Plaintiff was and is performing his job satisfactorily. *Id.* at 28-29. Therefore, only the third and fourth element of the *McDonnell Douglas* test are contested in this litigation. Magistrate Judge Kosko determined, however, that the Plaintiff could not establish that he had suffered an adverse employment action or that he had been treated differently from similarly situated employees outside the protected class. *Id.* at 29.

The court finds that the Magistrate Judge correctly found that Plaintiff has produced no evidence to show that he was treated any differently from any other employee who committed a similar transgression, and therefore he has consequentially failed to establish a *prima facie* case of

---

[2] The relevant language from *McDonnell Douglas* is as follows:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802.

7

employment discrimination. Because he has failed to establish this essential element of employment discrimination under *McDonnell Douglas*, the court need not even address the issue of whether the brief termination/suspension of Plaintiff's employment constituted an adverse employment action.

In his Objections, Plaintiff states that he was treated differently than other employees during the August 21, 2006 termination, and contends that Defendant Doonan was aware of Doan's nationality or race, even though the two men had never met. (Pl.'s Objections at 5, 6.) Contrary to Plaintiff's Objections, the Magistrate Judge correctly found that there is no evidence in the record that Doan was treated differently than any other QSR due to his race or national origin. Plaintiff is unable to establish an essential element of a prima facie claim, that he was treated differently than similarly situated employees outside the protected class.

> As the United States District Court for the Eastern District of North Carolina has noted,
> 
> A court need compare only discipline imposed for like offenses in sorting out claims of disparate discipline under Title VII. While the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances, some comparison must be made. If the plaintiff's discipline fell within a range of discipline imposed on white employees for the specific violation, then there was no disparity of treatment from which one could conclude that plaintiff's discipline was a product of illegal discrimination.

*McDougal-Wilson*, 427 F. Supp. 2d at 610 (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511-12 (4th Cir. 1993)) (internal quotation marks and citations omitted); *See also Saran v. Harvey*, No. 1:05-CV-727, 2006 WL 1049157, at *8-9 (E.D. Va. 2006) (granting defendant's motion for summary judgment on gender discrimination claim because plaintiff "cannot prove that her employer treated similarly situated employees outside of her protected class differently than [p]laintiff"). "In the Title VII context, isolated incidents or random comparisons demonstrating disparities in treatment are insufficient to draw a prima facie inference of discrimination without

8

additional evidence that the alleged phenomenon of inequality also exists with respect to the entire relevant group of employees." *Settle v. Baltimore County*, 34 F. Supp. 2d 969 (D. Md. 1999) (quoting *Houck v.Virginia Polytechnic Inst.*, 10 F.3d 204, 206-07 (4th Cir. 1993)) (emphasis omitted).

In the case *sub judice*, Plaintiff argues in his Response to Defendants' Motion for Summary Judgment that another employee, Maurese Odom ("Odom"), admitted to Doan that Odom had done private software installation for a customer and that Doonan was aware of this occurrence, but did not discipline Odom for it. (Pl.'s Resp. at 11-12; Pl.'s Aff. ¶¶16-17; Doan Dep. at 73:3-25, 74:1-18.) In his deposition, Plaintiff identifies Odom as a QSP, but Doan provides no further admissible evidence as to Odom's situation being similar. (Doan Dep. at 73:3-25, 74:1-18.) Defendants identify Odom as an African-American, (Defs.' Resp. at 8), but there is no further information provided by the Plaintiff regarding Odom's class. No other evidence of any other employees in similar situations outside Plaintiff's protected class is offered by the Plaintiff. In response to Plaintiff's accusation, Defendants assert that another QSP, Sam Sylvest, who took a side payment from a customer was terminated. (Doonan Dep. 20:10-24, 11:1-9.) Whether or not Sam Sylvest is a member of the protected class is not in the record. Doonan also claims not to be aware of Odom ever taking cash from a customer. *Id.* at 21:15-20. Doan claims that he requested Odom to provide a statement for this litigation, but that Odom declined. (Pl.'s Aff. ¶¶ 18-19.)

The burden is on Plaintiff at this stage to offer evidence of others in a similar situation and to their class. Here, Plaintiff relies only upon an unsworn statement to support his contention, and the court finds Plaintiff has not presented admissible evidence to support his claim. Accordingly, there is no evidence that Doonan treated Doan any differently than other QSPs who committed

9

similar transgressions.

Plaintiff also objects to the manner in which the termination was handled. According to Moriarty, it is customary for a supervisor to speak to Human Resources before an employee is terminated. (Moriarty Dep. January 4, 2008 9:17-24, 10:2-18.) However, Plaintiff claims Human Resources was not consulted prior to his termination by Doonan. Moriarty confirms this, (*id.* at 8:19-22), although this is disputed by Doonan. (Doonan Dep. 19:5-13) Looking at the evidence in the light most favorable to the Plaintiff, there is evidence present to establish an issue of fact as to whether Doonan followed company procedure in firing Doan.

However, that issue of fact is not material and does not go to the analysis at hand, which is to determine whether Doan was treated differently than similarly situated employees outside the protected class. Whether or not Doonan knew of the race or national origin of the Plaintiff is not at issue in the determination of a prima facie case of disparate treatment. Plaintiff offers no evidence of any other employees outside Plaintiff's class that were terminated following a communication with QualxServ Human Resources or with a warning beforehand. Moreover, the court is not to be the arbiter of every employment action where an employee is unhappy, especially in this case where the employee was reinstated in full the following business day. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000) ("Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion.").

The court finds that, based on the record and the evidence it contains, Plaintiff cannot establish a prima facie case of disparate treatment. The court thus grants Defendant's Motion for Summary Judgment with respect to Plaintiff's claim of discrimination by disparate treatment based

on Plaintiff's race or national origin.

**2.     Motion to Strike**

The Magistrate Judge found the Defendants' Motion to Strike well-founded, and recommended that the Motion be granted. Plaintiff objected to this portion of the R&R. The court finds that to strike an affidavit or sections from it would be a drastic move considering the context of the motion. "Federal Rule of Civil Procedure 56(e) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996). In the present litigation, Plaintiff submitted an affidavit which contained unsupported legal conclusions, information based upon hearsay, or claims that were unsupported by the record. However, the striking of an affidavit is a serious action not to be taken lightly. At this point in the case, where Defendants have succeeded in their Motion for Summary Judgment, it is not necessary to further review the affidavit in the Plaintiff's Response to Defendants' Motion for Summary Judgment. This court considered the Plaintiff's affidavit in the analysis for the Motion for Summary Judgment and found some of the statements to be lacking as admissible evidence, but the court viewed the statements with that knowledge. Because the striking of Plaintiff's affidavit is a dramatic measure that would have no effect on the ultimate outcome of the present litigation, the court declines to grant Defendant's Motion to Strike the pertinent parts of Plaintiff's affidavit.

**3.     Motion for Attorneys' Fees**

The Magistrate Judge recommended that this court consider granting Defendants attorneys' fees. Attorneys' fees can be granted in a Title VII case where a plaintiff's case is shown to be "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly

became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). However, in the present litigation, the record indicates that Plaintiff was in fact fired in a manner not in accordance with QualxServ's standard policies and procedures. Furthermore, Plaintiff apparently had a good faith belief that at least one other employee whom was not a member of Plaintiff's protected class committed a similar transgression and did not have their position as a QSP terminated, even though Doonan was aware of the actions. All circumstances surrounding the case indicate that Plaintiff honestly believed that he had been discriminated against because of his race and national origin. While further facts that were revealed as the case progressed showed that Plaintiff's claims were not meritorious and the underlying factual bases for his legal claims were not, in fact, true, there is no indication that Plaintiff pursued this lawsuit to harass Defendants, or with any ulterior motive other than to vindicate his Title VII rights. Accordingly, the court declines the Magistrate Judge's recommendation to consider awarding Defendants attorneys' fees.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion for Summary Judgment is **GRANTED** and that the Defendants' Motion to Strike is **DENIED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**August 17, 2008**